UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – DETROIT

In re:

G & D Investment Properties, LLC,                    Case No. 12-61081
                                                     Chapter 11
        Debtor.                                      Hon. Walter Shapero

_____/

OPINION REGARDING OBJECTIONS TO CONFIRMATION

I.  INTRODUCTION

This opinion addresses Debtor's request for confirmation of its Second Amended Combined Plan of Reorganization and Disclosure Statement (the "Plan"). The United States Trustee ("UST") and Fifth Third Bank ("Fifth Third") object to confirmation. The Court held an evidentiary hearing on confirmation, at which witnesses testified and exhibits were admitted. The UST put his objections on the record, but did not otherwise participate. For the reasons explained in this opinion, the Court concludes that confirmation can and should be denied based solely on the UST's objections.

II.  JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(a) and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(L) (confirmation of plans).

III. FACTS AND PROCEDURAL HISTORY

Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on September 18, 2012. This is a single asset real estate case. Debtor is a Michigan limited liability company, which owns and operates a 53 unit apartment complex in Wyandotte, Michigan. Its sole members are Geraldine Cataldo and Pietro Cataldo. Debtor's Schedule A lists only the

1

apartment complex, with a value of $850,000.00. Schedule B lists a checking account, receivables, and personal property with a total value of $55,000.00. Schedule D lists a mortgage liability due to Fifth Third of $1,330,000.00 and real estate taxes due to the Wayne County Treasurer of $151,556.07. Schedule F lists six creditors with claims totaling $6,812.53. The bulk of these claims are those due Wyandotte Municipal Services, which total $3,848.32, and the remaining five claims, totaling $2,964.21, are for utilities, landscaping, and legal and accounting services.

On October 17, 2012, Fifth Third filed its Motion for Relief from Stay, the disposition of which was deferred pending the filing of a plan. Debtor filed the proposed Plan on May 24, 2013. On May 28, 2013, the Court entered an Order granting preliminary approval of the Disclosure Statement and setting a deadline of July 8, 2013 for the return of ballots, for the filing of objections to final approval of the disclosure statement, and for the filing of objections to confirmation of the Plan. Objections, as noted, were filed. That Order also set a hearing on objections to final approval of the disclosure statement and confirmation of the plan for July 11, 2013. That Order and the proposed Combined Plan and Disclosure Statement were properly served on the parties entitled to notice under Fed. R. Bankr. P. 2002(b) and the UST. The confirmation hearing was adjourned (largely to accommodate discovery) and ultimately took place on December 17, 2013, combined with a hearing on Fifth Third's Motion for Relief from Stay. The Plan provides for three classes of claims, each of which is impaired: Class I is the secured claim of Fifth third Bank in the amount of $1,148,443.93; Class II is the secured claim of the Wayne County Treasurer in the amount of $146,406.49; and Class III is comprised of allowed unsecured claims, in the approximate total amount of $185,000.00, most of which consisted of the unsecured portion of Fifth Third's claim.

The proposed plan also includes Article 5, entitled "Means for Implementation of Plan."

Paragraph 5.2 of Article 5 provides in relevant part:

> Debtor will proceed with an auction of the Interests of Debtor on the day prior to the confirmation hearing set by the Court at 10:00 a.m., which may be adjourned by the Court or Debtor. The auction of the Interests shall occur at the offices of Nathan Zousmer, P.C., 29100 Northwestern Hwy., Ste. 310, Southfield, Michigan 48034. The following terms and conditions shall apply to Debtor's consideration of any offer to be made at the auction:
>
> > 1. Any Creditor in this Case or other party, including any Interest holder of Debtor, who wishes to make a cash offer for all of the Interests in Debtor, shall notify the Debtor's counsel, Michael I. Zousmer, 29100 Northwestern Hwy., Ste. 310, Southfield, Michigan 48034, in writing of its intent to make an offer no later than two Business Days prior to the date of the auction. At the time of giving such notice, such party or parties, including any Interest holder, shall tender a bank check in the amount of $5,000, which amount shall be held by Debtor's counsel in escrow as a deposit to be applied to the payment of the amounts due under the Equity Contribution Agreement, attached as Exhibit "A." …

On July 1, 2013, the UST filed objections to confirmation of the proposed Plan, asserting, at paragraph 5 of the objections:

> Paragraph 5.2 of the proposed plan, entitled "Auction" provides for an auction of the interests of the Debtor one day prior to the hearing on confirmation of the proposed plan. The proposed auction appears to be a premature attempt to cram down the plan pursuant to 11 U.S.C. § 1129(b), prior to any disallowance of the plan under 11 U.S.C. § 1129(a) and prior to the findings by the Court necessary to permit a cram down. Additionally, there appears to have been insufficient notice of the proposed auction to satisfy the open market requirements of *Bank of America Nat. Trust and Sav. Ass'n v. North LaSalle Street Partnership*, 526 U.S. 434, 119 S.Ct.1411, 143 L.Ed.2d 456-58 (1999)."

Fifth Third also filed objections to confirmation of the Plan on July 2, 2013, included in which is the same objection filed by the UST which is the subject of this opinion. Neither Class I nor Class III voted to accept the Plan. The Wayne County Treasurer, the holder of the Class II claim, accepted the Plan. The only notice of the auction was that contained in the circulated Plan and Disclosure Statement. No other marketing of what was being auctioned took place.

3

The only persons who attended the auction, which was held on December 16, 2013, were the principals of Debtor who bid $5,000.00 for the equity interests of Debtor.

This dispute is essentially a question of law.

## IV. <u>DISCUSSION</u>

The UST (and Fifth Third) argue that (1) Debtor's failure to obtain this Court's permission for its pre-confirmation auction of its equity renders the auction void, preventing confirmation of Debtor's Plan under 11 U.S.C. § 1129(a); and (2) the Plan violates the absolute priority rule, preventing confirmation of Debtor's Plan under 11 U.S.C. § 1129(b).

Section 1129(a) of the Bankruptcy Code states, in relevant part:

(a)  The court shall confirm a plan only if all of the following requirements are met:

*        *        *

    (8) With respect to each class of claims or interests –
        (A) such class has accepted the plan; or
        (B) such class is not impaired under the plan.

### A.  <u>Compliance with the Absolute Priority Rule</u>

The Objectors argue that Debtor's failure to properly market the equity interest is in conflict with the absolute priority rule, precluding confirmation.

Section 1129(b) of the Bankruptcy Code allows for nonconsensual confirmation, or "cramdown," if at least one impaired class votes in favor of the plan. Section 1129(b)(1) states:

Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

4

Thus, assuming Debtors have met their burden under the Section 1129(a) requirements, Section 1129(b) excuses the subsection (a)(8) requirement of all impaired classes voting in favor of the plan, instead requiring acceptance by at least one impaired class if: (1) the plan "not discriminate unfairly"; and (2) the plan is "fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted the plan."

Section 1129(b)(2) of the Bankruptcy Code concerns the "fair and equitable" requirement, and it states, in relevant part:

> (2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:
>
> *    *    *
>
> (B) With respect to a class of unsecured claims—
>
> > (i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or
> >
> > (ii) **the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property**, except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115, subject to the requirements of subsection (a)(14) of this section.

11 U.S.C. § 1129(b)(2)(B) (emphasis added). The language highlighted in bold states what is commonly known as the "absolute priority rule." The absolute priority rule is a limitation created due to "the danger inherent in any reorganization plan proposed by a debtor ... that the plan will simply turn out to be too good a deal for the debtor's owners." *Bank of Am. Nat'l Trust & Savs. Ass'n v. 203 N. LaSalle St. P'ship,* 526 U.S. 434, 119 S.Ct. 1411, 1417, 143 L.Ed.2d 607 (1999).

5

The Objectors argue that the Plan is in violation of the absolute priority rule because, as a result of the auction, which was not properly or sufficiently marketed, Debtor's principals would retain their property interest in Debtor, and this must be deemed to be "on account of" Debtor's principals' pre-bankruptcy equity interest in Debtor.

Debtor, on the other hand, argues that the "fair and equitable" requirement has been met, because the "new value corollary" to the absolute priority rule, discussed in *North LaSalle,* has been satisfied.

The applicable principles are set forth in the following:

In *North LaSalle*, the United States Supreme Court explained that the "new value corollary," which has been recognized by many lower courts, derives from an interpretation of the "on account of" language in § 1129(b)(2)(B)(ii). 526 U.S. at 442-43. The Supreme Court noted that according to a majority of a divided panel of the Seventh Circuit in the case before it, *In re 203 N. LaSalle St. P'ship*, 126 F.3d 955 (7th Cir. 1997), the "new value corollary"

> provides that the objection of an impaired senior class does not bar junior claim holders from receiving or retaining property interests in the debtor after reorganization, if they contribute new capital in money or money's worth, reasonably equivalent to the property's value, and necessary for successful reorganization of the restructured enterprise.

*Id.* The Supreme Court further noted that in the case before it, the Seventh Circuit panel majority held that

> "when an old equity holder retains an equity interest in the reorganized debtor by meeting the requirements of the new value corollary, he is not receiving or retaining that interest 'on account of ' his prior equitable ownership of the debtor. Rather, he is allowed to participate in the reorganized entity 'on account of' a new, substantial, necessary and fair infusion of capital."

*Id.* The Supreme Court noted further that the dissent to the Seventh Circuit panel majority's opinion argued that under the plain language of § 1129(b)(2)(B)(ii), there is no "new value" exception to the absolute priority rule. *Id.* at 443 (citing *In re 203 N. LaSalle St. P'ship*, 126 F.3d 955, 970 (7th Cir. 1997)).

6

The Supreme Court found it unnecessary to decide whether there is actually a "new value" corollary to the absolute priority rule, because even assuming that there is such a corollary, the plan in *North LaSalle* did not satisfy it. *Id.* at 454. The plan in *North LaSalle* was proposed during a time when the debtor partnership had the exclusive right to propose a plan, and provided pre-petition equity holders of the debtor (the limited partners of the debtor partnership) with the exclusive opportunity to obtain ownership interests in the reorganized debtor by contributing new value to the reorganized debtor. *Id.* at 438-40. The Supreme Court held that the plan was "doomed . . . by its provision for vesting equity in the reorganized business in the [d]ebtor's partners without extending an opportunity to anyone else either to compete for that equity or to propose a competing reorganization plan." *Id.* at 454.

The Supreme Court held that the *opportunity* to obtain an interest in the reorganized debtor was itself a property interest, and that when a plan gives such an opportunity exclusively to the old equity holders, it must be deemed to be "on account of" their equity interests within the meaning of § 1129(b)(2)(B)(ii). *Id.* at 455. The Court explained:

> If the price to be paid for the equity interest is the best obtainable, old equity does not need the protection of exclusiveness (unless to trump an equal offer from someone else); if it is not the best, there is no apparent reason for giving old equity a bargain. There is no reason, that is, unless the very purpose of the whole transaction is, at least in part, to do old equity a favor. And that, of course, is to say that old equity would obtain its opportunity, and the resulting benefit, because of old equity's prior interest within the meaning of subsection (b)(2)(B)(ii). Hence it is that the exclusiveness of the opportunity, with its protection against the market's scrutiny of the purchase price by means of competing bids or even competing plan proposals, renders the partners' right a property interest extended "on account of" the old equity position and therefore subject to an unpaid senior creditor class's objection.

*Id.* at 456. The Supreme Court held that even if there is a new value corollary to the absolute priority rule, "a debtor's prebankruptcy equity holders may [not], over the objection of a senior class of impaired creditors, contribute new capital and receive ownership interests in the reorganized entity, when that opportunity is given exclusively to the old equity holders under a plan adopted without consideration of alternatives." *Id.* at 437.

*In re Ralph Roberts Realty, LLC*, 487 B.R. 480, 483-84 (Bankr. E.D. Mich. 2012).

Was the auction in this case sufficient to meet the *North LaSalle* requirements? It is clear

under *North LaSalle* that Debtors must provide for market exposure and/or some competitive

7

process and that the old equity must "demonstrate its payment of top dollar." *North LaSalle*, 526 U.S. 456. However, it was left unclear what type of market exposure and/or competitive process would satisfy *North LaSalle*. *Id*. at 458 ("Whether a market test would require an opportunity to offer competing plans or would be satisfied by a right to bid for the same interest sought by old equity is a question we do not decide here."). Post *North LaSalle,* courts have repeatedly held that a proposed plan is unconfirmable for failure to provide such a "market test." *See In re Castleton Plaza, LP*, 707 F.3d 821, 822 (7th Cir. 2013) (reversing the bankruptcy court's plan confirmation order, the Seventh Circuit ruled that under *North LaSalle,* if unsecured creditors are not paid in full and reject the plan, an insider of the equity holder cannot inject new value and obtain ownership; Debtor must expose the new equity to some type of competitive bidding process); *In re GAC Storage El Monte, LLC*, 2013 WL 1124074, at * 17 (Bankr. N.D. Ill. 2013) (plan has to provide an opportunity for competition); *In re RIM Development, LLC*, 448 B.R. 280, 292 (Bankr. D. Kan. 2010) (failure to provide for *North LaSalle*-type "competition or market valuation" renders plan "patently unconfirmable")*.* Neither the UST or Debtor has cited any case from this district setting forth what type of market exposure and/or competitive process is sufficient to satisfy the requirements set forth *North LaSalle*.

In this case, as noted, the Plan provided that any creditor or any other party, including any interest holder, could participate in the auction, but notice of the auction was only provided in the proposed Plan. Therefore, only creditors, interest holders, and other parties who received the plan as a result of being included on the matrix, such as the UST, received actual notice of the auction.

The UST argues that Debtor failed to market the property to entities with a likelihood of having some interest in acquiring such a property, such as real estate investors and real estate

investment trusts, which resulted in a failure to provide "the benefit of a market valuation" as set forth in *North LaSalle*.

Debtor cites *Graham & Currie Well Drilling*, No. 11-04363-8-JRL, 2011 WL 5909632 (Bankr. E.D. N.C. Nov. 1, 2011) for the proposition that courts have embraced the type of equity auction proposed in this Plan after the *North LaSalle* decision. In *Graham & Currie Well Drilling*, the debtor's largest unsecured creditor objected to confirmation of the proposed plan that allowed the debtor's principal to retain a 100% ownership in the debtor post-confirmation. The court denied confirmation of the plan, reasoning that the equity interest in the debtor must be determined by the market, and stated:

> The court finds that the debtor's plan satisfies all the requirements under § 1129 except the absolute priority rule. Based on non-compliance with § 1129(b)(2)(B)(ii) as it relates to the class of unsecured creditors the court **DENIES** the motion for confirmation. The debtor may file an amended plan to meet the requirements of § 1129. The amended plan may read that at the original confirmation hearing the unsecured class rejected its treatment under the plan, and to satisfy the absolute priority rule the principal of the debtor has offered $5,000.00 to retain his equity interest. **The debtor may then re-notice the creditors of the debtor with the amended plan, and require anyone desiring to pay more than $5,000.00 for the equity interest to notify the court in writing at least five days before the hearing on confirmation of the amended chapter 11 plan.** If there is no response, the court will find that $5,000.00 is sufficient for the principal to retain his equity interest. If there is a response, the equity interest will be sold at the confirmation hearing.

*Graham & Currie Well Drilling Co., Inc.*, 2011 WL 5909632 at *2 (emphasis added).

Debtor also cites two cases pre-dating *North LaSalle* in support of its position that courts throughout the country have blessed or required equity auctions identical to the one in this case: *In re Bjolmes Realty Trust*, 134 B.R. 1000 (Bankr. Mass. 1991) and *In re Homestead Partners, Ltd.*, 197 B.R. 706 (Bankr. N.D. Ga. 1996).

Debtor in *Bjolmes* owned an apartment complex. Debtor's proposed plan provided that its stockholders would retain their equity interests in return for an additional capital contribution

of $17,000.00. The court in that case required the sale of Debtor's equity at auction, stating "at the very least creditors [should] be given an opportunity to match or exceed the amount available from stockholders." The court denied preliminary approval of Debtor's disclosure statement, sating:

> Where, as here, the shares are not publicly traded, the only way to measure the proposed contribution against actual market value is to offer the stock for sale. **In circumstances where creditors are not interested in bidding, or they lack the funds to do so, the business would presumably have to be placed on the market in order to encourage third party buyers.** That is not the situation here. As the holder of a first mortgage which it seeks to foreclose, and as a party with substantial resources, the FDIC is a likely buyer.

*Bjolmes*, 134 B.R. at 1010 (emphasis added). The court ordered that the FDIC and any other creditor of Debtor would be allowed to participate in the auction of Debtor's equity.

Likewise, Debtor in *Homestead Partners* owned an apartment complex. The court in that case, citing *Bjolmes*, held that "any confirmation order handed down in this case merely shall come subject to a contingent requirement that the new equity interest be held out for auction, with each creditor given the opportunity to vie for control of the reorganized Debtor by entering its own competing bid." *Homestead Partners,* 197 B.R. at 719.

The UST argues that *Bjolmes and Homestead Partners* have no application to this case because both cases pre-date *North LaSalle* and there was no mention in those cases of the requirement set forth in *North LaSalle* that any auction of Debtor's equity must produce "top dollar."

It is unclear what procedure or requirements must be met in order to comply with the "market exposure and/or competitive process" and "top dollar" requirements set forth in *North LaSalle*, and this Court will not attempt delineate such in this opinion. However, despite the fact that some courts have found an auction of a debtor's equity to be sufficient where Debtor's

creditors were given notice and the opportunity to bid, in this case, the Court has decided that the auction procedures set forth in the Plan and the actual auction held in this case were insufficient to meet the requirements set forth in *North LaSalle*. In this case, other than the Wayne County Treasurer, Fifth Third, and the miscellaneous creditors on Schedule F holding claims totaling $6,812.53, only the equity holders were in a position to participate in the auction. Given the small size and nature of the Schedule F claims, it is unlikely that any of those claimants would be either interested in, or capable of proposing a competing plan or bidding at the auction. Neither the Wayne County Treasurer or Fifth Third is in business of operating apartment complexes and, in any event, the Wayne County Treasurer has voted in favor of the Plan and Fifth Third has chosen to object to confirmation of the Plan and seek relief from stay. A truly competitive process at the very least requires good faith efforts to identify and locate likely or possible competitors.

It should also be kept in mind that (a) what the "interests" that are ostensibly the subjects of the auction are technically the membership interests of the two members of the Debtor limited liability company; (b) unless its applicable operating agreement (which is not in evidence nor part of the disclosure statement) provides otherwise, the applicable statute provides that assignment of a membership interest does not carry with it the right to manage the property of the entity, rather only entitles the assignee to his or her share of the profits; and (c) the operating agreement may also contain provisions affecting the price that might be paid for membership interests, absent agreement or consent to the contrary. Such arguably could negatively affect the price, but it needs to be made known and taken into account as part of an acceptable process. For the indicated "market test" to have substance and meaning, particularly in a situation such as one involving an apartment project in apparent financial trouble, there at least should be involved

a process that affirmatively sets out and exposes what is being sold to potential buyers, and such should not be limited to those served with the Plan setting forth the auction. In a sense, that process needs to replicate what might be appropriate exposure and marketing that would normally be involved in a 11 U.S.C. § 363 sale of the apartment project itself, though not necessarily formally following § 363 procedure.

The auction effected in this case does not meet that standard. This is not to necessarily say or conclude that the $5,000.00 is not the best price obtainable. It may very well be. But the concern and requirement is for and about the process by which that price is obtained, and incident to that, which information is made available to parties who might be interested in a purchase regarding how it might be obtained, at what cost, and when. It should also be noted that the auction notice was in a real sense buried in a lengthy, complex Plan and was essentially incidental to the primarily concerned confirmation voting process. Furthermore, what might be considered adequate disclosures for the purposes of a disclosure statement may not be what persons interested in bidding might want to know and find out before doing so, though the latter likely could be the subject of appropriate asked for and obtained discovery. Accordingly, the Court must conclude that the auction did not meet what the Court concludes is the "market exposure and/or competitive process" requirement set forth in *North LaSalle.*

Accordingly, the Court concludes that Debtor's Plan has not satisfied the absolute priority rule and that the December 16, 2013, auction is void.

### A. Applicability of 11 U.S.C. § 363(b)

As noted, the UST also argues that the December 16, 2013, auction of Debtor's equity was not "in the ordinary course of Debtor's business" and that the auction should be declared void based on Debtor's failure to comply with the notice and hearing requirements found in 11

U.S.C. § 363(b). The UST cites *In re American Development Corp.*, 95 B.R. 735 (Bankr. C.D. Cal. 1989) and *In re First Internat'l Services Corp.*, 25 B.R. 66 (Bankr. D. Conn. 1982) in support of his arguments.

In the *American Development Corp.* case, a Chapter 11 debtor sought authorization of the bankruptcy court to transfer all of its assets to a wholly owned subsidiary. *American Development Corp.*, 95 B.R. at 737. The debtor represented that it was seeking court approval despite its belief that the proposed transaction could be considered one in the ordinary course of business under 11 U.S.C. § 363(b) and, therefore, outside the review of the court. *Id*. The court concluded that "[a] transfer of all the assets of an entity to a subsidiary is not a matter in the ordinary course of business". *Id*. at 737. The Court stated: "The proposed transaction . . . requires my approval. Debtor has the burden of proof to persuade me that the proposed transaction is appropriate in light of its reorganization effort and should be approved." *Id*. at 739.

In the *First Internat'l Services Corp.* case, the debtors were interrelated corporations in the business of operating a franchise system of hair cutting salons. *First Internat'l Services Corp.*, 25 B.R. at 67. The debtors entered into an agreement for the sale of all of their stock in connection with consulting agreements entered into by principals of the debtors. *Id*. at 68. No court approval was sought by the debtors and the parties to the agreement sought to keep the agreement confidential. *Id*. at 69. Creditors learned of the agreement for the sale of stock and sought an order declaring the agreement void. *Id*. The court stated:

> As an additional reason for voiding the entire agreement, CPO points to the requirements of Code Section 363(b) which requires a notice and an opportunity for a hearing when "property of the estate" is to be sold other than in the "ordinary course of business."
>
> It is indisputable that the Agreement, providing for, *inter alia,* the sale of all of the debtor corporations' shares, was out of the ordinary course of the debtors' business. It is equally clear that while the shares of the debtors' stock, owned by

non-debtors, are not property of the estate, the sale of all of the debtors' stock and thus the transfer of control of the debtor corporations is an event so inextricably related to the property of the debtors' estates that Code Section 363(b) must be read to include the requirement of notice and a hearing prior to the transfer.

*In re First Int'l Servs. Corp.*, 25 B.R. 66, 70 (Bankr. D. Conn. 1982).

Debtor argues that neither of the cases cited by the UST involved the sale of a debtor's equity under a plan of reorganization or an auction of the equity, and, therefore, they are not applicable in this case. While it is clear that an auction of Debtor's equity interest was not within "the ordinary course of business," the Court is not persuaded that it is necessary for Debtor to strictly comply with the requirements of § 363(b) in the case of an equity auction tied to confirmation of a Plan. Rather it can be otherwise accomplished in a manner this Court has indicated meets the *North LaSalle* requirements.

## V. CONCLUSION

For the reasons set forth in this Opinion, the Court concludes that Debtor's Plan has not satisfied the absolute priority rule and that the December 16, 2013, auction is void for failure to comply with the requirements set forth in *North LaSalle*, and therefore, for that reason alone, the Plan is not confirmable. Debtors may take the opportunity of filing an amended plan to address that issue and, if it wishes to do so, to address some of the issues related to the other outstanding objections to confirmation. Debtor shall present an appropriate order.

**Signed on June 05, 2014**

         **/s/ Walter Shapero**
       **Walter Shapero**
       **United States Bankruptcy Judge**